UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 SEP 20  PM 4: 37

CLERK
SO. DIST. OF GA.

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                          ) | Case No. CR606-007 |
| ) | |
| JAMES DANIEL KENNEDY,       ) | |
| ) | |
| Defendant.                  ) | |

### REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress all evidence seized following the stop of his vehicle on June 23, 2005. Doc. 21. The Court held an evidentiary hearing on this matter on September 14, 2006, at which time the government offered testimony from Sergeant Michael Jarrell of the Tattnall County Sheriff's Department. For the reasons that follow, the motion to suppress should be DENIED.

### I. Background

On the evening of June 23, 2006, while conducting regular traffic patrol near Camp Ground Road and Highway 280, Sgt. Jarrell observed a paneled Ford utility truck whose window tint appeared to be darker than

allowed under Georgia law. Jarrell intended to give the driver a verbal warning and activated his blue lights. The vehicle did not pull over, however, prompting Jarrell to sound his siren. After traveling approximately one mile, the vehicle turned off the roadway, entered onto property known by the officer to belong to James Daniel Kennedy, and pulled to a stop. When the driver exited the vehicle, Jarrell recognized him as defendant Kennedy, a person known by the officer to be suspected by state agents of selling or using narcotics. Jarrell asked for defendant's driver's license and proof of insurance and explained the reason for the stop. Defendant stated that he knew his window tint, which he described as "limo tint," was too dark but indicated that he had not had time to remove it. Following his standard practice, Sgt. Jarrell radioed the sheriff's department's dispatch officer and requested a computer records check of defendant's driver's license and tag number. At this time, other units from the Tattnall County Sheriff's Department and the Georgia State Patrol arrived on the scene.

While awaiting the results of GCIC/NCIC records check, Sgt. Jarrell commented that he had heard certain "rumors" that defendant was

involved in narcotics trafficking and asked defendant to consent to a search of his vehicle. When defendant declined to give his consent, Jarrell stated that he was going to have his drug dog complete a free air sniff around the vehicle, which Jarrell routinely does during traffic stops unless he obtains consent to search.[1] As he was led around the vehicle, the drug dog alerted at a compartment on the utility bed of the truck. Sgt. Jarrell asked a fellow officer to check the compartment as he returned the drug dog to his patrol vehicle. Shortly after the dog's alert, which occurred some ten to fifteen minutes into the traffic stop, Sgt. Jarrell received a report from the dispatch officer that defendant's driver's license and tag number were valid.

Meanwhile, a search of the compartment where the drug dog had alerted revealed three plastic bags of suspected marijuana. Sgt. Jarrell then arrested defendant, who denied ownership of the contents of the compartment. The officers searched the rest of the vehicle and found an assault rifle, an apparent pipe bomb hidden behind a seat, and suspected methamphetamines. Using a digital device, Sgt. Jarrell measured the light transmission of the windshield and window glass in defendant's vehicle at

---

[1] Sgt. Jarrell is a canine handler for the sheriff's department and keeps his drug dog ("Cpl. Benny") with him while on patrol.

4 percent, which was less than the minimum 32 percent required by Georgia law. O.C.G.A. § 40-8-73.1. Defendant was not cited or charged with this violation.

## II. Analysis

Defendant first argues that he had not committed a traffic violation and that Sgt. Jarrell lacked any other reasonable suspicion of criminal activity sufficient to justify a stop of his vehicle. Doc. 21. The uncontested facts, however, do not support this contention.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996). The existence of probable cause depends purely on the objective facts available to the officer. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. For this reason, the Supreme Court has rejected the notion that a traffic stop based on probable cause is constitutionally permissible only if a reasonable officer "would have" made the stop solely for the purpose of enforcing the traffic laws. Id. at 813-15;

4

see Riley v. City of Montgomery, 104 F.3d 1247, 1252 (11th Cir. 1997) (holding that the constitutional reasonableness of a traffic stop is determined irrespective of the intent of the individual officer or a theoretical "reasonable officer"). Therefore, "a police officer may stop a vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)).

Jarrell testified that, based on his personal observation, he suspected the utility truck's window tint was too dark to comply with Georgia law. Indeed, he could not tell who was driving the vehicle because of the darkened windows.[2] These observations led Jarrell to the reasonable belief that the driver of the truck was operating a motor vehicle in violation of Georgia law, which furnished legitimate grounds to initiate the traffic stop. As Sgt. Jarrell had probable cause to believe a traffic violation had occurred,

---

[2] Although Sgt. Jarrell could not discern the driver's identity prior to the traffic stop, he knew defendant Kennedy, and once the truck exited the roadway onto property known by the officer to be defendant's residence, he suspected that Kennedy was the driver.

5

the stop of defendant's vehicle was entirely proper. See Ciak v. State, 597 S.E.2d 392, 396 (Ga. 2004) (objective observation by trained officer resulting in belief that tinting appeared darker than that permitted by law supported reasonable suspicion that defendant was violating O.C.G.A. § 40-8-73.1, and subsequent field test determining that citation was not warranted was insufficient to render stop invalid); United States v. Weaver, 145 Fed. Appx. 639, 642 (11th Cir. 2005) (deputy had probable cause to stop defendant under Florida's window-tinting statute when deputy could not see driver's silhouette through the window at close range).

Defendant also contends that officers searched his vehicle without probable cause. Again, the facts do not support this contention. "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Illinois v. Caballes, 543 U.S. 405, 410 (2005). While defendant's counsel at the evidentiary hearing made much of the fact that his client's consent was not obtained prior to leading the drug dog around his vehicle, such consent was

not required.³ The dog alerted on a compartment on the vehicle, indicating that the odor of narcotics was present. Once the dog alerted on defendant's truck, the officers had probable cause to conduct a search of the vehicle, and under the "automobile exception" to the warrant requirement, the officers were entitled to proceed with the search without first seeking a search warrant. Tamari, 454 F.3d at 1261.

While a dog sniff performed during a routine traffic stop does not violate the Fourth Amendment, "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407-408. It is undisputed that (1) the dog alerted before Sgt. Jarrell had even received the information from dispatch regarding defendant's license and registration, and (2) the alert occurred within ten

---

³At the evidentiary hearing, the government stipulated that a GBI investigative report (referred to by defense counsel but not offered into evidence) contained a notation that someone overheard defendant indicate that he did not want the officer to lead the drug dog around his vehicle. Even if defendant made such a statement (and the government has not stipulated that any such statement was actually made, nor has defendant established that it was), this would not change the analysis, for defendant could not preclude the officer from performing an act which the Constitution permits an officer to perform during a lawful traffic stop. United States v. Tamari, 454 F.3d 1259, 1265 n.6 (11th Cir. 2006) ("a dog sniff performed during a lawful traffic stop is not a search implicating Fourth Amendment concerns.").

7

to fifteen minutes from the time he initiated the traffic stop. The Eleventh Circuit, addressing the length of a constitutional stop, has stated that "[w]here at its inception, a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than seventeen minutes can ever be unconstitutional on account of its duration: the duration is too short." United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005). Furthermore, there is simply no evidence that the officer prolonged the traffic stop in order to secure the services of a drug dog or perform a free air search of defendant's vehicle. Thus, the drugs and weapons recovered from defendant's vehicle were lawfully discovered, and neither the stop nor the search violated the Constitution.

## III. Conclusion

The evidence establishes that Sgt. Jarrell's initial traffic stop of defendant was lawful since Jarrell reasonably believed that the windows on the vehicle were too dark, in violation of the Georgia motor vehicle code. During the course of that stop, Sgt. Jarrell had his drug dog perform a routine free air sniff around defendant's vehicle, and the drug dog alerted

on the vehicle before dispatch responded to Jarrell's request to run defendant's driver's license and tag number. The subsequent search of defendant's vehicle was constitutional, and the contraband seized during the search is not "fruit of the poisonous tree" as defendant contends. Defendant's motion to suppress should therefore be DENIED.

**SO REPORTED AND RECOMMENDED** this 20TH day of September, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA