# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | | | |
|---|---|---|---|
| JAMES DANIEL KENNEDY, | ) | | |
| | ) | | |
| Movant, | ) | | |
| | ) | | |
| v. | ) | Case No. | CV610-038 |
| | ) | | CR606-007 |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## REPORT AND RECOMMENDATION

After earlier securing 28 U.S.C. § 2255 relief that permitted him to file an untimely appeal, *Kennedy v. United States*, CV607-078, doc. 1 (S.D. Ga. May 13, 2008), James Daniel Kennedy has filed a new § 2255 motion challenging the effectiveness of his trial and appellate attorneys. (Doc. 1.[1]) The government does not contend that the new motion is "second or successive" under 28 U.S.C. § 2255(h), and clearly it is not, for

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV610-038. "Cr. Doc." Refers to documents filed under his criminal case, CR606-007.

it is the first § 2255 motion filed after Kennedy's direct appeal. Kennedy's latest § 2255 motion, however, is without merit and should be **DENIED**.

In December 2006, Kennedy pled guilty to possession of listed chemicals with the intent to manufacture a controlled substance. (Doc. 1 at 1.) Specifically, he admitted possession of pseudoephedrine tablets, which he intended to use to manufacture methamphetamine. (Cr. doc. 33 at 2.) According to the Presentence Investigation Report ("PSI") prepared by the Probation Office, at least two people fingered Kennedy as a meth manufacturer. (PSI ¶¶ 5-6.) Then, during a traffic stop, officers found him in possession of contraband and weaponry, including approximately two pounds of marijuana, numerous plastic bags containing methamphetamine, a semiautomatic rifle, two revolvers, and a pipe bomb. (*Id.* ¶¶ 7-8.) During a more in-depth inventory search, officers discovered numerous methamphetamine manufacturing items in his truck, including an enormous number of pseudoephedrine pills. (*Id.* ¶¶ 12, 14, 17.)

Kennedy was sentenced to 210 months' imprisonment and took no appeal. (Doc. 1 at 1.) Thereafter, he filed his first § 2255 motion, alleging that his appointed counsel promised to file a notice of appeal but failed to do so. *Kennedy v. United States*, No. CV607-078, doc. 1 (S.D. Ga. May 13, 2008). The Court granted that motion, and Kennedy appealed. *Id.*, doc. 7. He argued on direct appeal that the sentencing judge incorrectly calculated his base offense level under the United States Sentencing Guidelines ("U.S.S.G.") "by (1) including quantities of drugs not part of the count of conviction, and (2) estimating inaccurately the gram weight of the actual pseudoephedrine contained in the tablets." *United States v. Kennedy*, 326 F. App'x 509, 510-11 (11th Cir. 2009). He also challenged a sentencing enhancement for possessing a firearm during the commission of the crime. *Id.* at 512. Finding no error, the appeals court affirmed. *Id.* Now back before this Court with the instant § 2255 motion, Kennedy raises three claims of attorney ineffectiveness.

In addressing such claims, the Court is guided by *Strickland v. Washington*, 466 U.S. 668 (1984), which created a two-part test for determining whether counsel's assistance was ineffective. First, the

movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983). Hence, in the sentencing context, a movant must show a reasonable probability that the result of the sentencing proceeding would have been different. *Lawhorn v. Allen*, 519 F.3d 1272, 1296 (11th Cir. 2008).

Here, Kennedy raises three ineffectiveness arguments. First, he claims that his sentencing and appellate counsel were ineffective for failing to challenge "double counting" in determining his base offense level under the sentencing guidelines. (Doc. 1 at 4.) Second, he contends that trial counsel was ineffective for failing to challenge the total drug quantity attributed to him at sentencing. (*Id.* at 5.) Third, he claims that his appellate counsel was ineffective for failing to properly challenge

the two-level enhancement for possessing a firearm during the offense. (Doc. 1-1 at 3.)

The first claim, regarding the "double counting," is plainly meritless, but the Court can understand Kennedy's confusion on this matter given the complexities of the sentencing guidelines. He points out that two separate PSI paragraphs add a two-point enhancement to his offense level for possessing a firearm in relation to the offense. (Doc. 1-1 at 4 (citing PSI ¶¶ 24 & 26); doc. 9 at 1-2.) A layman reviewing the PSI's calculations might understandably conclude that the guideline's firearm enhancement was twice applied to Kennedy's base offense level of 32, first increasing him to level 34 and then to level 36. In relevant part, the PSI reads:

> 23. **Base Offense Level:** The United States Sentencing Commission Guidelines for Violation of 21 U.S.C. § 841(c)(1) is found in U.S.S.G. § 2D1.11. Pursuant to U.S.S.G. § 2D1.11(d)(4), drug offenses involving at least 100 but less than 300 grams of pseudoephedrine have a base offense level of 32. Since this case involved 282.24 grams of pseudoephedrine, the base offense level of 32 is warranted.
>
> __32__

24. **Specific Offense Characteristic:** Pursuant to U.S.S.G. § 2D1.11(b)(1), if a dangerous weapon (including a firearm) was possessed, increase by two levels. Three firearms and an improvised explosive device were found in the defendant's vehicle where objects related to the manufacture of methamphetamine were also found. Ten additional firearms were found in the defendant's residence.

 +2

By this point, then, Kennedy's base offense level was 32 and his total offense level was 34. Both paragraphs above address U.S.S.G. § 2D.*11*. But in the next two paragraphs the PSI shifts to a different (but confusingly similar looking) section -- U.S.S.G. § 2D1.*1*. The *base* offense level under § 2D1.1 is 34 -- the same as the *total* offense level under § 2D1.11, including the firearms enhancement:

25. **Specific Offense Characteristic:** Pursuant to U.S.S.G. § 2D1.11(c)(1), if the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply U.S.S.G. § 2D1.1, if the resulting offense level is greater than that determined above. Pursuant to U.S.S.G. § 2D1.1(c)(3), drug offenses involving at least 3,000 but less than 10,000 kilograms of marihuana have a base offense level of 34. Since this case involved an equivalent of 3,263.64 kilograms of marihuana, the base offense level of 34 is warranted. Accordingly, the guidelines found in U.S.S.G. § 2D1.1(c)(3) will be utilized to establish the base offense level in this case.

Next, the § 2D1.1 firearms enhancement is added:

> 26. **Specific Offense Characteristic:** Pursuant to U.S.S.G. § 2D1.1(b)(1), if a dangerous weapon (including a firearm) was possessed, increase by two levels. Three firearms and an improvised explosive device were found in the defendant's vehicle where objects related to the manufacture of methamphetamine were also found. Ten additional firearms were found in the defendant's residence.
>
> +2

(PSI at 10-11.) That results in a total offense level of 36. (*Id.*)

A close reading of the PSI shows that there was no double counting even though, at first glance, it appears that the firearms enhancement was added twice. Paragraph 25 makes clear that the PSI employed *alternate* counting systems. Under § 2D1.*11*, the base offense level was 32, and with the § 2D1.11(b)(1) firearms enhancement, the total offense level rose to 34. Under § 2D1.*1*, however, the base offense level was 34, and with the § 2D1.1(b)(1) firearms enhancement, the total offense level rose to 36. Such alternative calculations are required by the sentencing guidelines.

A defendant's base offense level for unlawful *possession* of a controlled substance is determined by referencing U.S.S.G. § 2D1.11 -- exactly what was calculated in paragraphs 23 and 24. That brought Kennedy to a 34 total offense level. But if an offense involves *manufacturing* a controlled substance, the sentencing court must also determine the offense level under U.S.S.G. § 2D1.1 and apply the *higher* of the two total offense levels. U.S.S.G. § 2D1.11(c)(1) ("If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 . . . if the resulting offense level is greater than that determined above."). Paragraphs 25 and 26 above make clear that the resulting offense level was higher under § 2D1.1. The sentencing judge relied on § 2D1.1 in determining the proper sentencing range and thus there was no double counting.[2] Because the firearm enhancement was not double counted,

---

[2] Indeed, his initial sentencing attorney recognized as much since he objected to the PSI's reliance upon § 2D1.1 in determining Kennedy's offense level. (PSI Addendum ¶ 2.) So did the Court of Appeals:

> The district court calculated Kennedy's base offense level pursuant to U.S.S.G. § 2D1.1, based on a cross-reference in U.S.S.G. § 2D1.11 -- the guideline for possessing a listed chemical -- because his offense involved the unlawful manufacture of methamphetamine and resulted in a greater offense level. *See* U.S.S.G. § 2D1.11(c)(1).

Kennedy's attorneys cannot have performed deficiently for failing to raise the issue at sentencing or on appeal, nor can he show prejudice. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (per curiam) (no prejudice under *Strickland* where counsel failed to raise a meritless issue).

Movant's next claim, that sentencing counsel erred by failing to challenge the drug amount, is unsupported and conclusory. Kennedy states that "[p]rior to sentencing, I told my counsel that the drug determination regarding my drug weight was incorrect and a more detailed accounting should be conducted." (Doc. 1 at 5.) He has not provided any evidence or support for his contention that the determination was actually incorrect. Nor has he stated *which* drug weight (i.e., methamphetamine or pseudoephedrine[3]) he is contesting or which sentencing attorney he is attacking -- a critical issue considering that he was twice sentenced in this case. He cannot rest on speculation,

---

*Kennedy*, 326 F. App'x at 511 n.1.

[3] The marijuana seized from his truck was not weighed by a crime laboratory, so it was not used by the Probation Office in calculating drug quantities in the PSI. (PSI ¶ 16.)

conclusory assertions, or mere conjecture that something might have been discovered had a "more detailed accounting" been conducted.[4] *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (*citing Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)). Accordingly, this claim fails.[5]

Finally, Kennedy contends (in his brief, not in the body of his motion) that his appellate attorney failed to *properly* raise his claim that his sentence was unconstitutionally enhanced for possession of a firearm. (Doc. 1-1 at 5.) Instead, his appellate attorney raised a "boilerplate argument that had little, if any, chance of success." (*Id.* at 3.). This argument is meritless.

Kennedy's appellate attorney argued that the government did not

---

[4] Moreover, his claim to have informed his counsel of this matter is suspect, as he was twice offered an opportunity to raise such an objection but did not do so. At his first sentencing hearing, the sentencing judge explicitly asked Kennedy whether he had "any objections or observations that [he] wish[ed] to make that are separate and distinct" from those made by his attorney. (Cr. doc. 52 at 10.) He replied that he did not. (*Id.* at 10-11.) He was similarly offered the chance to state his objections at resentencing. (Cr doc. 53 at 10.)

[5] Kennedy's appellate attorney argued on appeal that the sentencing judge erred by "estimating inaccurately the gram weight of actual pseudoephedrine contained in the tablets." *Kennedy*, 326 F. App'x at 510-11. The Court of Appeals "discern[ed] no error in the probation officer's method of calculation." *Id.* at 511.

meet its burden of showing that he possessed a dangerous weapon under the guidelines. He suggested that the government needed to show that the weapons were not merely in close proximity to the site of the charged offense, but that they were "part of the same course of conduct, common scheme, or plan as the offense of conviction." (Doc. 6-1 at 15, *citing United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997) (emphasis removed).) "More specifically, the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; presence or involvement can not be the result of accident or coincidence." (*Id.* (emphasis removed).) Applying this test, counsel argued that

> the mere fact that he had loaded weapons inside his truck and that he also possessed illegal drugs at the same time does not prove the guns and pseudoephedrine are "connected" to each other. The Appellant never brandished a weapon or used a weapon against anyone involved in these events. He possessed a number of weapons at his residence. [PSI-5] These were also included in the Probation Officer's report as if they were in someway "connected" with his possession of pseudoephedrine at the time of the traffic stop. [PSI-5] Such reasoning is unfair and unreasonable. Had the Appellant actually used or threatened to use one of the weapons involved, then he would have nothing to stand on with respect to this argument. Such was not the case.

(Doc. 6-1 at 15-16.)

The Court of Appeals rejected the argument out of hand. First, it explained the procedure a district judge should follow when applying the two-point enhancement:

> If a defendant possessed a dangerous weapon during a drug trafficking offense, a two-level increase is warranted. U.S.S.G. § 2D1.1(b)(1). "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). The government has the burden of demonstrating the proximity of the weapon to the site of the charged offense by preponderance of the evidence. *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). If the government meets its burden, the burden shifts to the defendant to demonstrate that a connection between the weapon and the offense clearly was improbable. *Id.*

*Kennedy*, 326 F. App'x at 512. Hence, the government need show only *proximity*, not a relationship to the crime. The sentencing judge, then,

> properly applied the firearm enhancement to Kennedy's sentence. The government showed -- and Kennedy did not dispute -- that three guns and a functional improvised explosive device ("pipe bomb") were present in his truck where the pertinent pseudoephedrine tablets were discovered during a routine traffic stop and vehicle inventory search. The government was not required to do more to prove that the weapons were used to aid in the offense. *See Audain*, 254 F.3d at 1289. And Kennedy presented no evidence to meet his burden of demonstrating that a connection between the firearms and the drugs clearly was improbable.

*Kennedy*, 326 F. App'x at 512.

Kennedy now argues that his attorney's "four paragraph boilerplate argument leaves little doubt that appellate counsel was more *pro forma* than adversarial, in consequence, this *pro forma* representation denied Petitioner effective assistance of counsel on direct appeal." (Doc. 1-1 at 5.) Counsel, according to Kennedy, should have distinguished *Audain*, since the government in that case relied on a government witness for testimony that the defendant knowingly assisted in the transportation of drugs while carrying a gun. (*Id.* at 6.) In this case, however, "there is absolutely no evidence to suggest that Petitioner carried a firearm during any drug trafficking crime." (*Id.*) Too, the government did not introduce evidence showing that the firearms had "'some purpose or effect with respect to the drug trafficking crime.'" (*Id., quoting United States v. Timmons*, 283 F.3d 1246, 1256 (11th Cir. 2002).[6])

In essence, then, Kennedy argues that his counsel was ineffective for raising the right argument but failing to cite additional Eleventh Circuit authority and explicitly distinguish *Audain*. *Audain*, however, is

---

[6] He also cites to *United States v. Stallings*, 463 F.3d 1218, 1220-21 (11th Cir. 2006). (Doc. 1-1 at 6.)

directly on point. Like Kennedy, Audain argued that there was no evidence showing that he carried a firearm to help him facilitate the transportation of drugs. *Audain*, 254 F.3d at 1289. The *Audain* court brushed away this argument, reasoning that the government need only show that a firearm was *present* during the drug offense. *Id.* at 1280-90. Indeed, the Eleventh Circuit has repeatedly held that when a firearm is present at the site of the charged conduct, nothing else need be shown to apply the § 2D1.1(b)(1) two-point enhancement. *Audain*, 254 F.3d at 1289-90; *see United States v. Chupurdy*, 299 F. App'x 889 (11th Cir. 2008) (the government need only show proximity of the firearm to the site of the charged offense; it need not prove that the firearm was used to facilitate the distribution of drugs); *United States v. Hall*, 46 F.3d 62, 63-64 (11th Cir. 1995) ("Once the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable. This result follows from the plain language of the Guidelines. Subsection 2D1.1(b)(1) itself does not require a connection

between the offense and the firearm. It requires only that the firearm have been possessed by the defendant."); *United States v. Hansley*, 54 F.3d 709, 716 (11th Cir. 1995) (same).

Kennedy's citations do not help his case. For instance, *Stallings* relied upon the same *Audain* test, but involved an additional gloss: "To justify a firearms enhancement [under § 2D1.1], the government must *either* establish by a preponderance of the evidence that the firearm was *present* at the site of the charged conduct *or* prove that the defendant possessed the firearm during conduct associated with the offense of conviction." *Stallings*, 463 F.3d at 1220 (emphasis added). Kennedy would have the Court apply the second test, but it has no application here since firearms were located at the site of the charged conduct. Three firearms and a pipe bomb were discovered in Kennedy's truck along with drugs and materials for manufacturing methamphetamine. In *Stallings*, on the other hand, the government failed under both prongs, since "[t]he *only* evidence that [it] introduced was that the police found three handguns in [defendant's] home -- where no one suggested that any activities related to the [drug] conspiracy ever took place." *Id.*

at 1221 (emphasis in original).

*Smith*, in turn, actually cuts against Kennedy. In that case, the Court held "[s]ince Smith had a firearm on him at the time he was arrested [for a drug offense], he *possessed* a firearm within the meaning of § 2D1.1(b)(1)." *Smith*, 127 F.3d at 1390 (emphasis added). And while Kennedy cites to *Timmons*, that case is of no use here, since it only directly addresses a statutory sentencing enhancement under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug trafficking crime. *Stallings* simply adopted the same relationship test for § 2D1.1(b)(1) enhancements where the government cannot show that the firearm was present at the scene of the offense conduct.

So perhaps it is true that the sentencing judge here, in applying the enhancement, could not have relied solely upon the firearms discovered later at Kennedy's house. But it is undisputed that "[t]hree firearms and an improvised explosive device were found in the defendant's vehicle where objects related to the manufacture of methamphetamine were also found." (PSI ¶ 26.) The burden thus shifted back to Kennedy to show that any connection between the drugs and guns was clearly improbable,

a burden that he still has not even attempted to satisfy.[7] Since his contention that the enhancement should not apply without an additional showing by the government is plainly meritless, he cannot show that he was prejudiced by his appellate attorney's failure to "properly" argue it.

For the foregoing reasons, Kennedy's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

---

[7] His suggestion in his reply brief that appellate counsel should have worked harder to find support for that showing is not helpful -- Kennedy was perfectly capable of preparing an affidavit alleging that his assault rifle, complete with multiple fully loaded 30 round magazines, and his loaded .357 revolver, were only incidentally in his possession at the time of his arrest and had nothing to do with his drug trafficking and manufacturing. (Doc. 9 at 3-4.) Yet he did not do so.

**SO REPORTED AND RECOMMENDED** this  23rd  day of September, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA